# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**KENNETH HODGE**                                                                               **PLAINTIFF**

**v.**                                         **CIVIL ACTION NO. 3:05CV-P831-S**

**LOUISVILLE/JEFFERSON COUNTY METRO JAIL** *et al.*           **DEFENDANTS**

## MEMORANDUM OPINION

Alleging federal and state constitutional violations flowing from a slip-and-fall accident at the Louisville/Jefferson County Metro Jail, Plaintiff Kenneth Hodge filed a *pro se* complaint in Jefferson Circuit Court styled, "Complaint Filed for Declaration of Rights; Petition for Declaratory Judgment; 42 U.S.C. § 1983 Filed in State Court; and All Other Relief to Which Petitioner is Entitled." Plaintiff names the following Defendants: Louisville/Jefferson County Metro Jail ("Metro Jail"); Mayor Jerry Abramson; City Councilmen; Head Jailer; and Deputy Head Jailers. Defendants removed the state court action, asserting that this Court has original jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 (DN 1). Plaintiff has not requested a remand to state court.[1]

---

[1] There appears to be a procedural defect in the removal process as only one Defendant filed the notice of removal without explaining the non-joinder of all Defendants. *Klein v. Manor Healthcare Corp.*, Nos. 92-4328, 92-4347, 1994 WL 91786, at *9 n.8 (6th Cir. Mar. 22, 1994) ("A petition for removal filed by less than all defendants is considered defective if it does not contain an explanation for the non-joinder of those defendants."). Notwithstanding this defect, the Sixth Circuit has explicitly held that "[28 U.S.C.] § 1447(c) does not authorize sua sponte remands for purely procedural defects." *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995). And because Plaintiff did not argue the procedural defect within 30 days of removal of the action, *see* § 1447(c), he has waived that defect. *Id.*

Because this Court has subject matter jurisdiction over the § 1983 claims, removal is proper. The Court must now screen the complaint pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e. For the reasons that follow, the Court will dismiss the § 1983 claims and decline to exercise supplemental jurisdiction over the state law claims, mandating their remand to state court.

## I.

Plaintiff was incarcerated at the Metro Jail from the date of his arrest on May 6, 2004, until his transfer to the Roederer Correctional Complex on June 21, 2005.[2] He maintains that during that period of time, there was a drainage problem with the showers causing the floors around the showers to remain wet. In fact, he claims that there had been a drainage problem at the jail for years and attached an affidavit of Andrew Abel, a former Metro Jail inmate, who averred that there was a problem with standing water on the shower floor during his incarceration from May 2003 to June 2003. Mr. Abel reported,

> We asked about filing a grievance and the jailer sent Maintenance men to check out the problem. They checked the drain and it was clear. They told us the floor wasn't sloped towards the drain so that the water would go down and there was nothing he could do about it other than tearing up the floor in all the pods and redoing the floor and that the City was not going to pay to have that done.

On April 8, 2005, because of this drainage problem, Plaintiff slipped and fell on standing water and injured his foot. Although a "Nurse looked at [Plaintiff's] foot and immediately knew that it was broke," jail medical personnel did not x-ray his foot until five days later on April 13, 2005, and it was another fourteen days until he was transported to the University of Louisville Hospital Clinic for examination. Hospital physicians concluded that Plaintiff's "foot would have

---

[2]Plaintiff is currently incarcerated at the Blackburn Correctional Complex.

to be re-broken [and] surgery would be necessary to put in rods and bolts." The physicians told Plaintiff that he needed surgery as soon as possible for his foot to heal properly and advised him that he would have arthritis. Despite the urgency, Plaintiff was not taken back to the hospital during his incarceration at the Metro Jail but was given only Ibuprofen for pain control even though he "was in sever[e] pain and suffered throughout this ordeal." Plaintiff claims that he was not taken back because officials decided to save money by waiting until the Kentucky Department of Corrections ("KDOC") took custody of him.

On June 21, 2005, Plaintiff was taken into the custody of the KDOC and placed in the Roederer Correctional Complex. Upon notifying the medical department about his foot, he was taken back to the clinic for an examination. Physicians informed him that it was too late for the surgery as his bones had already re-set, and they opined that surgery would actually cause more damage.[3] Physicians further informed him that "he would keep on having pain, would not walk or run right, that he would soon develop crippling arthritis and [that] there was nothing they could do about it because the jail officials waited too long!" Plaintiff reports, "my foot is giving me constant pain with some good days and some days where the pain is just unbearable."

Plaintiff claims that Defendants were deliberately indifferent to his health and safety when they failed to correct the problem of standing water on the shower floor and that Defendants were deliberately indifferent to a serious medical need when they failed to provide him with timely treatment for his broken foot and when the municipality failed to train jail staff on the proper way to handle his medical situation. He asserts Fourteenth Amendment due

---

[3] On a later page in the complaint, however, Plaintiff contends that he "may have to undergo surgery where the foot is broke again and placed in a cast so that it will heal correctly."

process and equal protection violations and violations of the Eighth Amendment. He also alleges violations of the Kentucky Constitution. As relief, he seeks monetary and punitive damages and declaratory relief.

## II.

### A. 42 U.S.C. § 1983

As a preliminary matter, the Court highlights that Plaintiff fails to specify in which capacity he sues Defendants. "When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings" to ascertain whether the defendants have been notified of the potential for individual liability. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001), *cert. denied*, 536 U.S. 922 (2002). In the present case, Plaintiff repeatedly references language (such as municipal liability and failure to train) suggesting official capacity claims. However, Plaintiff additionally references supervisory liability and qualified immunity, two doctrines which suggest individual capacity claims. The Court will thus construe the complaint as asserting both individual and official capacity claims. While the individual capacity claims seek to hold the individual Defendants liable for their own actions, the official capacity claims seek to hold the municipality liable for its actions. Regardless of the capacity in which Plaintiff seeks relief, the § 1983 claims must be dismissed.

1. Failure to state a claim

Plaintiff has failed to state a claim with respect to his equal protection and cruel and unusual punishment claims. First, the Fourteenth Amendment equal protection claim must be dismissed as he fails to articulate any facts showing how he has been treated differently than others similarly situated, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985),

and he fails to allege any discriminatory purpose or intent on the part of any Defendant or the municipality. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979); *Washington v. Davis*, 426 U.S. 229 (1976). Second, the Eighth Amendment claim must be dismissed because Plaintiff was a pretrial detainee while housed at Metro Corrections, and the Eighth Amendment applies only to *convicted* prisoners as they are persons subject to "punishment." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

      2. <u>Failure to demonstrate exhaustion of available administrative remedies</u>

While the Eighth Amendment does not directly apply to pretrial detainees, they are not without constitutional protection from harm or the threat of harm. Rather, the Fourteenth Amendment's guarantee of substantive due process more aptly applies to those not yet convicted. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). Plaintiff raises two Fourteenth Amendment due process claims: (1) that Defendants were deliberately indifferent to his health and safety when they failed to correct the problem of standing water on the shower floor; and (2) that Defendants were deliberately indifferent to a serious medical need when they failed to provide him with timely treatment for his broken foot and when the municipality failed to train jail staff on the proper way to handle his medical situation. Plaintiff fails to demonstrate exhaustion of available administrative remedies as to these claims.

The Prison Litigation Reform Act of 1995 ("PLRA") established an administrative exhaustion requirement codified at 42 U.S.C. § 1997e(a). Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." In enacting this provision, Congress imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims under 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies is now mandatory, rather than discretionary. *Id.*; *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998). "[T]he PLRA exhaustion requirement requires proper exhaustion," *Woodford v. Ngo*, — S. Ct. — , 2006 WL 1698937, at *7 (U.S. June 22, 2006) (No. 05-416), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at *5. Finally, complete exhaustion of administrative remedies is required even if the administrative process cannot provide the plaintiff with the relief he seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

     The plaintiff has the burden of pleading exhaustion of administrative remedies. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). To establish exhaustion of available administrative remedies, a prisoner should attach to the complaint any decision demonstrating the administrative disposition of his claims. *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Brown*, 139 F.3d at 1104. If written documentation is not available, a prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El*, 215 F.3d at 642. "A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (quoting *Knuckles El*, 215 F.3d at 642, and citing *Brown*, 139 F.3d at 1104).

> [A] plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, [must] also not be allowed to amend his complaint to cure the defect. If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run.

*Baxter*, 305 F.3d at 489.

In the instant action, Plaintiff has wholly failed to meet his burden of pleading exhaustion of available administrative remedies as to any of the claims alleged. The Louisville-Jefferson County Metro Corrections Department has an inmate grievance procedure in place.[4] *See* Policy 11.14 (referencing 3-ALDF-3E-11, 501 KAR 3:140, Sec. 6). Yet Plaintiff has failed to attach any grievance to his complaint and has failed to allege that he grieved any of his claims against any Defendant.[5] The due process claims must therefore be dismissed.

The fact that this case was removed from state court does not cause the Court to alter this determination. As noted above, § 1997e(a) provides that "*No action* shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[4] All inmates receive "a written copy and an oral explanation of the Grievance Procedure at Orientation." An inmate is first required to attempt to resolve a grievance informally. If the grievance is unable to be resolved informally, the inmate may submit a formal written grievance, first to the Shift Commander for review, then to the appropriate Divisional Director, next to the Lieutenant Colonel, and finally to the Chief/Director of Corrections. The grievance procedure imposes time limits for resolution at each stage of the process and allows for extensions of those time limits. Additionally, the grievance procedure provides that "[a]bsent an extension, expiration of response time limits entitles the inmate to move on to the next step in the review process."

[5] The Court notes that as to Plaintiff's claim that Defendants were deliberately indifferent to his health and safety by not fixing the drainage problem in the shower, he does attach an affidavit from a former inmate who notes that sometime from May 2003 to June 2003, nearly a year prior to the date of Plaintiff's incarceration at the jail, "[w]e asked about filing a grievance and the jailer sent Maintenance men to check out the [drainage] problem" but decided not to fix the problem, citing that the City would not pay. This does not demonstrate exhaustion of Plaintiff's claims, however. Had he filed a grievance when he arrived at the jail nearly a year later, the outcome may have been different.

7

remedies as are available are exhausted." (emphasis added). In using the language "No action," § 1997e(a) fails to distinguish between federal- and state-initiated actions. *See*, *e.g.*, *Alexander v. Walker*, No. C 02-578 SI (PR), 2003 WL 297536, at *2 (N.D. Cal. Feb. 10, 2003) ("The language of § 1997e does not appear to be limited to actions filed in federal court by prisoners, and the court has not located any authority to not apply § 1997e to removed actions."); *Torres v. Corr. Corp. of Am.*, 372 F. Supp. 2d 1258 (N.D. Okla. 2005) (dismissing § 1983 claims in removed action due to plaintiff's failure to exhaust available administrative remedies under § 1997e(a)); *Lanier v. Holiday*, No. 05-2203-MI/P, 2005 WL 1513106, at *3 (6th Cir. June 16, 2005) (finding a removed complaint to be "fully within the scope of § 1997e").[6] To hold otherwise would allow prisoners to circumvent the exhaustion requirement altogether simply by filing a § 1983 action in state court only to have the action removed to federal court by defendants, as is common practice. This Court hardly believes that such a result was intended by Congress.

The Court will dismiss the due process claims without prejudice. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004) ("A dismissal under § 1997e should be without prejudice."), *cert. denied*, 125 S. Ct. 1639 (U.S. Mar. 21, 2005) (No. 04-784).

---

[6]*See also Martin v. Ohio Dep't of Rehab. & Corr.*, 749 N.E.2d 787, 790-91 (Ohio Ct. App. 2001) (relying on Sixth Circuit precedent to find that exhaustion of administrative remedies under 1997e(a) is a requirement, or condition precedent, under the PLRA, which must be met before a prisoner's § 1983 cause of action against prison officials can accrue, regardless of whether the claim is brought in federal court or state court); *Cole v. Loock*, 609 N.W. 2d 354, 358 (Neb. 2000) (stating that state courts are required to follow federal precedent in § 1983 cases); *Davis v. Dye*, 284 S.W. 1049, 1050 (Ky. 1926) ("As the question before us is the construction of a federal statute, we must be guided by the decisions of the federal courts.").

## B. <u>State law claims</u>

Finally, Plaintiff advances various state law tort claims. Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986) ("[T]his circuit has adopted the position that the district courts have minimal discretion to decide pendent state law claims on the merits once the basis for federal jurisdiction is dismissed before trial."). Because the Court will dismiss all federal claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining state law claims and will remand those claims to state court.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Counsel of Record
        Jefferson Circuit Court Clerk, Civil Action No. 05-CI-010137
4411.005